## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| Katherine Sims, | Case No. 4:17-cv-01916 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Caliber Home Loans, Inc., | |
| Defendant. | JURY TRIAL DEMANDED |

### INTRODUCTION

1.     Defendant Caliber Home Loans, Inc. (hereinafter "Defendant") harassed Plaintiff Katherine Sims (hereinafter "Plaintiff") with automated collection calls to her cell phone during an extremely difficult time in her life.

2.     In 2011, Plaintiff was married and living in a home with her husband and her young children. Plaintiff and her husband were paying on their mortgage to then-creditor SunTrust Mortgage until, one day, Plaintiff came home to find her husband lifeless in their bedroom. Plaintiff's husband had passed away, unexpectedly, in their home and she was left, with her children, in shock.

3.     Unable to keep up with bills on her own and incapable of staying in the home where she found her husband, Plaintiff surrendered her home and filed bankruptcy on the mortgage.

-1-

4.    Sometime thereafter, SunTrust Mortgage sold, assigned or otherwise transferred Plaintiff's mortgage to Defendant Caliber Home Loans, Inc.

5.    Defendant then started to repeatedly and automatically call Plaintiff on her cell phone in an effort to collect on the mortgage, even though Plaintiff had filed bankruptcy on the mortgage and surrendered her home, and despite the fact that Plaintiff never provided her express consent to Defendant to robodial her cell phone.

6.    Defendant's repeated and relentless calls to Plaintiff awakened her grief and stirred up the emotions that were tied to the house and the passing of her husband.

7.    Plaintiff continually explained to Defendant what happened at her home, informed Defendant that this mortgage was in bankruptcy, and pleaded with Defendant to stop calling her, but Defendant refused and continued to call.

8.    Defendant persistently utilized an automatic telephone dialing system to repeatedly dial Plaintiff's cellular telephone, which violated Plaintiff's privacy rights afforded under federal law.

9.    The United States Supreme Court has recognized a citizen's home as "the last citadel of the tired, the weary, and the sick," *Gregory v. Chicago,* 394 U.S. 111, 125 (1969), and has noted that "[p]reserving the sanctity of the home, the one retreat to which men and women can repair to escape from the

tribulations of their daily pursuits, is surely an important value." *Carey v. Brown,* 447 U.S. 455, 471 (1980).

10.     Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

11.     Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors albeit without a private right of action, when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

12.     The Honorable Court of Appeals for the 8th Circuit held that violations of the TCPA were violations of a consumer's right to privacy:

> We conclude that the ordinary meaning of the term "right of privacy" easily includes violations of the type of privacy

interest protected by the TCPA. Our court has previously stated that violations of the TCPA are "'invasions of privacy' under [the] ordinary, lay meaning[] of the[] phrase[].

*Owners Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814 (8th Cir. 2012)

(citing *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401

F.3d 876, 881 (8th Cir. 2005)).

13.    Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns and affairs.

14.    Defendant and its agents intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and private concerns of Plaintiff by repeatedly and unlawfully calling Plaintiff's cellular telephone, and by continuing to call Plaintiff after she asked them to stop.

15.    Defendant has caused Plaintiff actual harm not only because Plaintiff was subjected to the aggravation, invasions of privacy, and emotional distress that accompanied these repeated robocalls, but also these robocalls caused diminished battery life, wasted Plaintiff's plan minutes on her telephone service, wasted Plaintiff's time, and interfered with her ability to otherwise make and receive calls on her cellular telephone.

## **JURISDICTION**

16.    This action arises out of Defendant's repeated violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*.

17.   Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 47 U.S.C. § 227.

18.   Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendant transacts business here.

## PARTIES

19.   Plaintiff Katherine Sims is a natural person who resides in St. Louis, Missouri.

20.   Plaintiff has suffered a concrete injury in fact that is traceable to Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

21.   Defendant Caliber Home Loans, Inc. is a home mortgage originator and servicer with its corporate headquarters located at 3701 Regent Boulevard, Suite 200, Irving, Texas 75063.

22.   Defendant offers mortgages to Missouri consumers, uses one or more instrumentalities of interstate commerce, including telephone, electronic communication and the mail, to conduct business in the State of Missouri and within this judicial district, and maintains a registered agent of process here.

## FACTUAL ALLEGATIONS

23.   Within four years immediately preceding the filing of this lawsuit, Defendant and its agents used an automatic telephone dialing system to call Plaintiff's cellular telephone number in an effort to collect a debt from Plaintiff.

### *Telephone Consumer Protection Act*

24.     In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

25.     According to findings by the Federal Communications Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

26.     The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

27.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.

28.     The FCC also resolved the question of whether consent may be revoked in a Declaratory Ruling and Order released on July 10, 2015, wherein it determined that "[c]onsumers have the right to revoke consent, using any reasonable method including orally or in writing. Consumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller." *In the Matter of Rules and Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, FCC 15–72, 30 F.C.C.R. 7961 (July 10, 2015).

29.   On November 15, 2016, the FCC also denied a petition by the Mortgage Bankers Association and confirmed that mortgage servicers must obtain a homeowner's prior express consent to make calls to wireless phone numbers using an automatic telephone dialing system under the TCPA.

30.   The TCPA prohibits any person "to make any call (other than for emergency purposes or made with the prior consent of the called party) using any automatic telephone dialing system or any artificial or prerecorded voice – (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A).

31.   An "automatic telephone dialing system" (hereinafter "ATDS") means "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1)(A), (B).

32.   At all times relevant to this Complaint, Plaintiff was and is a "person" as defined by 47 U.S.C. § 153(39).

33.   At all times relevant to this Complaint, Plaintiff was and is the owner,

subscriber and user of a cellular telephone with the number 314-440-5809 (hereinafter "cell phone"), which was and is assigned to a cellular telephone service and a service that charges Plaintiff for calls.

34.   At all times relevant to this Complaint, Defendant knowingly used, controlled, and/or operated an ATDS as defined by the TCPA at 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(2).

### *Illegal Auto-Dialed Collection Calls*

35.   Within four years immediately preceding the filing of this lawsuit, Defendant and its agents knowingly used an ATDS to call Plaintiff's cell phone in an effort to collect a debt from Plaintiff.

36.   Within four years immediately preceding the filing of this lawsuit, Defendant also made calls to Plaintiff's cell phone using an artificial or prerecorded voice.

37.   Plaintiff did not expressly consent to Defendant's placement of telephone calls to her cell phone by the use of an ATDS or a prerecorded or artificial voice.

38.   Plaintiff also revoked any consent she may have previously given to Defendant to call her cell phone when she answered many of Defendant's calls and repeatedly asked Defendant to stop calling her.

39.   Shortly after Defendant's dialing campaign to Plaintiff's cell phone started,

Plaintiff explained to Defendant's representatives that this mortgage loan was included in her bankruptcy and therefore Defendant should not be calling to collect it.

40.   Plaintiff also specifically told Defendant's collectors to "quit calling" or otherwise asked them to stop calling in at least six different phone calls with Defendant.

41.   Defendant ignored Plaintiff's requests for it to stop calling her and it continued to call Plaintiff's cell phone.

42.   Defendant's representatives explained to Plaintiff that the calls would continue until the debt was collected.

43.   Other collectors of Defendant told Plaintiff that they needed a cease and desist letter in order for the calls to stop.

44.   Upon answering some of the calls from Defendant, Plaintiff would say "hello" and there would be a noticeable period of dead air and no live person on the other end of the call, which is indicative of an ATDS.

45.   Upon answering other calls from Defendant, Plaintiff would say "hello" and there would be a click or a long wait before the call was transferred to a live person or the call would get disconnected, which is further indicative of an ATDS.

46.   Some of Defendant's calls also led to voicemails that were totally silent and

nothing but dead air, which is further indicative of Defendant's use of an ATDS to make these calls to Plaintiff.

47.     Defendant also called Plaintiff's cell phone multiple times in a day and for many days in a row, which is further indicative of Defendant's use of an ATDS to make these calls to Plaintiff.

48.     Some of Defendant's calls also led to voicemails that were automated, prerecorded voices, which is proof of Defendant's use of an ATDS.

49.     Defendant knew, or should have known, that it did not have Plaintiff's consent to use an ATDS to call her cell phone, especially after Plaintiff's multiple requests for Defendant to stop calling her, yet they continued to harass Plaintiff with robocalls on a daily basis.

50.     Defendant's illegal automated calls to Plaintiff's cell phone originated from the telephone number 800-621-1437.

51.     These automated calls from Defendant to Plaintiff were made to Plaintiff's personal telephone, and therefore Plaintiff has suffered particularized concrete injuries because her cell phone was unavailable for legitimate use during these unwanted calls.

52.     Defendant's repeated autodialed collection calls to Plaintiff's cell phone, within the last four years prior to filing this Complaint, were illegal and in violation of the TCPA, 47 U.S.C. § 227 *et seq*.

53.   None of the telephone calls that Defendant placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

54.   Defendant willfully or knowingly violated the TCPA by continuing to call Plaintiff's cell phone after being told to stop because Defendant had no basis to believe that they had Plaintiff's prior express consent to make automated calls or to send artificial and prerecorded messages to Plaintiff's cell phone.

55.   Defendant also placed calls to Plaintiff's cell phone using a company that identified itself as "Fairfax, Inc." and said it was calling on behalf of Defendant Caliber Home Loans, Inc.

56.   The calls from Fairfax, Inc. originated from the phone number 314-334-8216 and, after the calls were connected, the representative of Fairfax, Inc. would transfer the call to Defendant.

57.   The acts of Fairfax, Inc. in calling Plaintiff's cell phone were conducted on behalf of Defendant and with the consent, approval, and/or ratification of Defendant.

58.   The FCC has issued an order that states:

> The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications. Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent. Similarly, a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation

of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.

*In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 565 (F.C.C. 2007), paragraph 10. (Footnotes omitted.)

59.    Accordingly, Defendant is liable for the autodialed collection calls of Fairfax, Inc. and any other third party collector that attempted to collect a debt for Defendant by using an ATDS to call Plaintiff's cell phone in violation of the TCPA.

### *Summary*

60.    All of the calls made to Plaintiff's cell phone by Defendant and its agents using an automatic telephone dialing system were made in violation of the TCPA, and were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

61.    Defendant's autodialed collection calls disrupted Plaintiff's privacy, disrupted Plaintiff during mealtimes, eliminated Plaintiff's right to be left alone, and continually frustrated and upset Plaintiff.

62.    These persistent autodialed collection calls eliminated the peace and solitude that Plaintiff would have otherwise had in Plaintiff's home and anywhere else Plaintiff went with her cell phone.

63.    By persistently autodialing Plaintiff's cell phone without her prior express

consent, Defendant invaded Plaintiff's right to privacy, as legally protected by the TCPA, and caused Plaintiff to suffer concrete and particularized harm.

### *Respondeat Superior Liability*

64.   The acts and omissions herein of the individuals employed to collect debts by Defendant, and the other debt collectors employed as agents of Defendant who communicated with Plaintiff as more further described herein, including Fairfax, Inc., were committed within the time and space limits of their agency relationship with their principal, Defendant.

65.   The acts and omissions by these individuals and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant in collecting debts.

66.   By committing these acts and omissions against Plaintiff, these individuals and these other debt collectors were motivated to benefit their principal, Defendant.

67.   Defendant is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, and Fairfax, Inc., including but not limited to violations of the TCPA in its attempts to collect a debt from Plaintiff.

## TRIAL BY JURY

68.    Plaintiff is entitled to and hereby respectfully demands a trial by jury on all

issues so triable.  US Const. amend. 7.  Fed. R. Civ. P. 38.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

## 47 U.S.C. § 227 *et seq.*

69.    Plaintiff incorporates by reference all of the above paragraphs of this

Complaint as though fully stated herein.

70.    Within the four-year period immediately preceding this action, Defendant

made numerous calls to Plaintiff's cell phone using an automatic telephone

dialing system in violation of the TCPA, 47 U.S.C.  § 227(b)(1)(A)(iii) and

47 C.F.R. 64.1200 (a)(1)(iii).

71.    The acts and/or omissions of Defendant at all times material and relevant

hereto, as described in this Complaint, were done unfairly, unlawfully,

intentionally, deceptively and absent bona fide error, lawful right, legal

defense, legal justification or legal excuse.

72.    As a causally direct and legally proximate result of the above violations of

the TCPA, Defendant, at all times material and relevant hereto and as

described in this Complaint, caused Plaintiff to sustain damages.

73.    Defendant did not have the prior express consent of Plaintiff to use an automatic telephone dialing system to call Plaintiff's cell phone.

74.    Defendant made these calls to Plaintiff's cell phone willfully and after Plaintiff explicitly asked Defendant to stop.

75.    Under 47 U.S.C. § 227(b)(3)(B), Plaintiff is entitled to statutory damages under the TCPA of $500.00 per automated phone call and per prerecorded message made to Plaintiff by Defendant and its agents.

76.    Defendant willfully and knowingly violated the TCPA and, as such, Plaintiff is entitled to $1,500.00 per automated phone call and per prerecorded message made to Plaintiff pursuant to 47 U.S.C. § 227(b)(3).

77.    Plaintiff is also entitled to injunctive relief prohibiting Defendant from contacting Plaintiff's cell phone using an automatic telephone dialing system pursuant to 47 U.S.C. § 227(b)(3)(a).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant as follows:

## **COUNT I.**

## **VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**

## **47 U.S.C.  § 227 *et seq.***

- for an award of statutory damages of $500.00 per call pursuant to 47 U.S.C.

§ 227(b)(3)(B) against Defendant and for Plaintiff;

- for an award of treble damages of $1,500.00 per call pursuant to 47 U.S.C. § 227(b)(3) against Defendant and for Plaintiff;

- for an injunction prohibiting Defendant from contacting the Plaintiff's cell phone using an automatic telephone dialing system pursuant to 47 U.S.C. § 227(b)(3)(A); and

- for such other and further relief as may be just and proper.

Respectfully submitted,

**Barry & Helwig, LLC**

Dated: June 30, 2017

By: /s/ Patrick J. Helwig
Patrick J. Helwig, Esq.
Attorney I.D. # 0391787MN
2701 University Ave SE, Suite 209
Minneapolis, Minnesota 55414-3236
Telephone: (612) 379-8800
Facsimile: (612) 379-8810
phelwig@lawpoint.com

**Law Offices Of William A. Mueller, LLC**
Kimberly Wirth, Esq.
Attorney I.D. # 6299352IL
Ron Buch, Esq.
Attorney I.D. # 6209955IL
5312 West Main Street
Belleville, IL 62226
Telephone: (618) 236-7000
Facsimile: (618) 236-7002
kwirth@tbcwam.com
rbuch@tbcwam.com

***Attorneys for Plaintiff***

-16-

## VERIFICATION OF COMPLAINT AND CERTIFICATION

Pursuant to 28 U.S.C. § 1746, Plaintiff Katherine Sims, having first been duly sworn and upon oath, verifies, certifies, and declares as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____June_____ _____30_____, _____2017_____
Month          Day          Year

_____
Signature

-17-