## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| Katherine Sims, | Case No. 4:17-cv-01916-HEA |
| Plaintiff, | |
| v. | **FIRST AMENDED COMPLAINT** |
| Caliber Home Loans, Inc., | |
| Defendant. | JURY TRIAL DEMANDED |

### INTRODUCTION

1.  Defendant Caliber Home Loans, Inc. (hereinafter "Defendant") harassed Plaintiff Katherine Sims (hereinafter "Plaintiff") with automated collection calls to her cell phone during an extremely difficult time in her life.

2.  In 2011, Plaintiff was married and living in a home with her husband and her young children. Plaintiff and her husband were paying on their mortgage to then-creditor SunTrust Mortgage until, one day, Plaintiff came home to find her husband lifeless in their bedroom. Plaintiff's husband had passed away, unexpectedly, in their home and she was left, with her children, in shock.

3.  Later in 2011, unable to keep up with bills on her own and incapable of staying in the home where she found her husband, Plaintiff defaulted on the mortgage payments and filed bankruptcy on the mortgage.

4.    Sometime after Plaintiff defaulted on the mortgage loan payments, SunTrust Mortgage sold its interest in the defaulted debt to DLJ Mortgage Capital, Inc., which then sold its interest in the defaulted debt to U.S. Bank Trust, N.A. as Trustee for LSF9 Master Participation Trust ("U.S. Bank LSF9 Trust"), which then assigned or otherwise transferred Plaintiff's defaulted mortgage to Defendant Caliber Home Loans, Inc. for collection from Plaintiff.

5.    Defendant then started to repeatedly and automatically call Plaintiff on her cell phone in an effort to collect on the mortgage, even though Plaintiff had filed bankruptcy on the mortgage and surrendered her home, and despite the fact that Plaintiff never provided her express consent to Defendant to robodial her cell phone.

6.    Defendant's repeated and relentless calls to Plaintiff awakened her grief and stirred up the emotions that were tied to the house and the passing of her husband.

7.    Plaintiff continually explained to Defendant what happened at her home, informed Defendant that this mortgage was in bankruptcy, and pleaded with Defendant to stop calling her, but Defendant refused and continued to call.

8.    Defendant persistently utilized an automatic telephone dialing system to repeatedly dial Plaintiff's cellular telephone, which violated Plaintiff's

privacy rights afforded under federal law.

9.  The United States Supreme Court has recognized a citizen's home as "the last citadel of the tired, the weary, and the sick," *Gregory v. Chicago,* 394 U.S. 111, 125 (1969), and has noted that "[p]reserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value." *Carey v. Brown,* 447 U.S. 455, 471 (1980).

10.  Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

11.  Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors albeit without a private right of action, when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal

information.

15 U.S.C. § 6801(a) (emphasis added).

12.    The Honorable Court of Appeals for the 8th Circuit held that violations of

the TCPA were violations of a consumer's right to privacy:

> We conclude that the ordinary meaning of the term "right of
> privacy" easily includes violations of the type of privacy
> interest protected by the TCPA.  Our court has previously stated
> that violations of the TCPA are "'invasions of privacy' under
> [the] ordinary, lay meaning[] of the[] phrase[].

*Owners Ins. Co. v. European Auto Works, Inc.*, 695 F.3d 814 (8th Cir. 2012)

(citing *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401

F.3d 876, 881 (8th Cir. 2005)).

13.    Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude,

seclusion, private concerns and affairs.

14.    Defendant and its agents intentionally and/or negligently interfered,

physically or otherwise, with the solitude, seclusion and private concerns of

Plaintiff by repeatedly and unlawfully calling Plaintiff's cellular telephone,

and by continuing to call Plaintiff after she asked them to stop.

15.    Defendant has caused Plaintiff actual harm not only because Plaintiff was

subjected to the aggravation, invasions of privacy, and emotional distress that

accompanied these repeated robocalls, but also these robocalls caused

diminished battery life, wasted Plaintiff's plan minutes on her telephone

-4-

service, wasted Plaintiff's time, and interfered with her ability to otherwise make and receive calls on her cellular telephone.

## JURISDICTION

16. This action arises out of Defendant's repeated violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*., and its violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.

17. Jurisdiction of this Court arises under 28 U.S.C. § 1331, and pursuant to 47 U.S.C. § 227 and 15 U.S.C. § 1692k(d).

18. Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendant transacts business here.

## PARTIES

19. Plaintiff Katherine Sims is a natural person who resides in St. Louis, Missouri.

20. Plaintiff has suffered a concrete injury in fact that is traceable to Defendant's conduct and that is likely to be redressed by a favorable decision in this matter.

21. Defendant Caliber Home Loans, Inc. is a Delaware corporation with its principal place of business in Irving, Texas.

22. Defendant uses one or more instrumentalities of interstate commerce, including telephone, electronic communication and the mail, to conduct

business in the State of Missouri and within this judicial district, and maintains a registered agent of process here.

## FACTUAL ALLEGATIONS

23.   Within four years immediately preceding the filing of this lawsuit, Defendant and its agents used an automatic telephone dialing system to call Plaintiff's cellular telephone number in an effort to collect a debt from Plaintiff.

### *Telephone Consumer Protection Act*

24.   In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

25.   According to findings by the Federal Communications Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

26.   The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

27.   On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.

28.   The FCC also resolved the question of whether consent may be revoked in a Declaratory Ruling and Order released on July 10, 2015, wherein it determined that "[c]onsumers have the right to revoke consent, using any reasonable method including orally or in writing. Consumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, FCC 15–72, 30 F.C.C.R. 7961 (July 10, 2015).

29.   On November 15, 2016, the FCC also denied a petition by the Mortgage Bankers Association and confirmed that mortgage servicers must obtain a homeowner's prior express consent to make calls to wireless phone numbers using an automatic telephone dialing system under the TCPA.

30.   The TCPA prohibits any person "to make any call (other than for emergency purposes or made with the prior consent of the called party) using any automatic telephone dialing system or any artificial or prerecorded voice – (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A).

31.   An "automatic telephone dialing system" (hereinafter "ATDS") means

"equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1)(A), (B).

32. At all times relevant to this Complaint, Plaintiff was and is a "person" as defined by 47 U.S.C. § 153(39).

33. At all times relevant to this Complaint, Plaintiff was and is the owner, subscriber and user of a cellular telephone with the number 314-440-5809 (hereinafter "cell phone"), which was and is assigned to a cellular telephone service and a service that charges Plaintiff for calls.

34. At all times relevant to this Complaint, Defendant knowingly used, controlled, and/or operated an ATDS as defined by the TCPA at 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(2).

### *Illegal Auto-Dialed Collection Calls*

35. Within four years immediately preceding the filing of this lawsuit, Defendant and its agents knowingly used an ATDS to call Plaintiff's cell phone in an effort to collect a debt from Plaintiff.

36. Within four years immediately preceding the filing of this lawsuit, Defendant also made calls to Plaintiff's cell phone using an artificial or prerecorded voice.

37. Plaintiff did not expressly consent to Defendant's placement of telephone

calls to her cell phone by the use of an ATDS or a prerecorded or artificial voice.

38.   Plaintiff also revoked any consent she may have previously given to Defendant to call her cell phone when she answered many of Defendant's calls and repeatedly asked Defendant to stop calling her.

39.   Shortly after Defendant's dialing campaign to Plaintiff's cell phone started, Plaintiff explained to Defendant's representatives that this mortgage loan was included in her bankruptcy and therefore Defendant should not be calling to collect it.

40.   Plaintiff also specifically told Defendant's collectors to "quit calling" or otherwise asked them to stop calling in at least six different phone calls with Defendant.

41.   Defendant ignored Plaintiff's requests for it to stop calling her and it continued to call Plaintiff's cell phone.

42.   Defendant's representatives explained to Plaintiff that the calls would continue until the debt was collected.

43.   Other collectors of Defendant told Plaintiff that they needed a cease and desist letter in order for the calls to stop.

44.   Upon answering some of the calls from Defendant, Plaintiff would say "hello" and there would be a noticeable period of dead air and no live person

on the other end of the call, which is indicative of an ATDS.

45.    Upon answering other calls from Defendant, Plaintiff would say "hello" and there would be a click or a long wait before the call was transferred to a live person or the call would get disconnected, which is further indicative of an ATDS.

46.    Some of Defendant's calls also led to voicemails that were totally silent and nothing but dead air, which is further indicative of Defendant's use of an ATDS to make these calls to Plaintiff.

47.    Defendant also called Plaintiff's cell phone multiple times in a day and for many days in a row, which is further indicative of Defendant's use of an ATDS to make these calls to Plaintiff.

48.    Some of Defendant's calls also led to voicemails that were automated, prerecorded voices, which is proof of Defendant's use of an ATDS.

49.    Defendant knew, or should have known, that it did not have Plaintiff's consent to use an ATDS to call her cell phone, especially after Plaintiff's multiple requests for Defendant to stop calling her, yet they continued to harass Plaintiff with robocalls on a daily basis.

50.    Defendant's illegal automated calls to Plaintiff's cell phone originated from the telephone number 800-621-1437.

51.    These automated calls from Defendant to Plaintiff were made to Plaintiff's

personal telephone, and therefore Plaintiff has suffered particularized concrete injuries because her cell phone was unavailable for legitimate use during these unwanted calls.

52. Defendant's repeated autodialed collection calls to Plaintiff's cell phone, within the last four years prior to filing this Complaint, were illegal and in violation of the TCPA, 47 U.S.C. § 227 *et seq*.

53. None of the telephone calls that Defendant placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

54. Defendant willfully or knowingly violated the TCPA by continuing to call Plaintiff's cell phone after being told to stop because Defendant had no basis to believe that they had Plaintiff's prior express consent to make automated calls or to send artificial and prerecorded messages to Plaintiff's cell phone.

55. Defendant also placed calls to Plaintiff's cell phone using a company that identified itself as "Fairfax, Inc." and said it was calling on behalf of Defendant Caliber Home Loans, Inc.

56. The calls from Fairfax, Inc. originated from the phone number 314-334-8216 and, after the calls were connected, the representative of Fairfax, Inc. would transfer the call to Defendant.

57. The acts of Fairfax, Inc. in calling Plaintiff's cell phone were conducted on behalf of Defendant and with the consent, approval, and/or ratification of

Defendant.

58.    The FCC has issued an order that states:

> The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications. Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent. Similarly, a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.

*In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 565 (F.C.C. 2007), paragraph 10. (Footnotes omitted.)

59.    Accordingly, Defendant is liable for the autodialed collection calls of Fairfax, Inc. and any other third party collector that attempted to collect a debt for Defendant by using an ATDS to call Plaintiff's cell phone in violation of the TCPA.

### Summary of TCPA Claims

60.    All of the calls made to Plaintiff's cell phone by Defendant and its agents using an automatic telephone dialing system were made in violation of the TCPA, and were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

61.    Defendant's autodialed collection calls disrupted Plaintiff's privacy,

disrupted Plaintiff during mealtimes, eliminated Plaintiff's right to be left alone, and continually frustrated and upset Plaintiff.

62. These persistent autodialed collection calls eliminated the peace and solitude that Plaintiff would have otherwise had in Plaintiff's home and anywhere else Plaintiff went with her cell phone.

63. By persistently autodialing Plaintiff's cell phone without her prior express consent, Defendant invaded Plaintiff's right to privacy, as legally protected by the TCPA, and caused Plaintiff to suffer concrete and particularized harm.

### *Fair Debt Collection Practices Act*

64. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy. Congress wrote the Fair Debt Collection Practices Act to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

65. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

66.     The subject mortgage debt is a "debt" as that term is defined by 15 U.S.C. §
        1692a(5) because it was a financial obligation incurred by Plaintiff that was
        primarily for personal, family or household purposes.

67.     Defendant is a "debt collector" as that term is defined by 15 U.S.C. §
        1692a(6) because it regularly uses the mails and/or the telephone to collect,
        or attempt to collect, directly or indirectly, delinquent consumer debts owed
        or due or asserted to be owed or due another.

68.     Defendant routinely acts as a servicer of defaulted consumer debt and, in
        doing so, attempts to collect delinquent debts from consumers nationwide,
        including consumers in the State of Missouri, which it asserts are owed to
        another company.

69.     In fact, Defendant was acting as a "debt collector," as that term is defined in
        the FDCPA, as to the subject consumer debt it attempted to collect from
        Plaintiff.

70.     Defendant is a "debt collector" in relation to the subject debt because the
        servicing rights and/or ownership rights were acquired by the U.S. Bank
        LSF9 Trust after the debt was already in default, and because Defendant was
        hired by the U.S. Bank LSF9 Trust to collect this debt after the default.

71.     On or about December 28, 2011, Plaintiff filed a Bankruptcy Petition under
        Chapter 13 of the United States Bankruptcy Code, in the United States

Bankruptcy Court for the Southern District of Illinois (Case No. 11-32027).

72.     Plaintiff's debt with SunTrust Mortgage was specifically listed in her bankruptcy filing.

73.     Plaintiff fully performed her duties as set forth in the Chapter 13 Plan, and the Court entered an Order of Discharge on January 21, 2015.

74.     On January 21, 2015, this Order of Discharge was served through the Bankruptcy Noticing Center on all parties with interest in the subject mortgage debt, including SunTrust Mortgage, DLJ Mortgage Capital, Inc., and U.S. Bank, N.A.

75.     Moreover, on May 16, 2016, in a Consent Judgment for Foreclosure entered in Monroe County, Waterloo, Illinois (Case No. 12-cv-00079), the U.S. Bank LSF9 Trust foreclosed on the property that was secured by the mortgage debt and specifically waived any and all rights to a personal judgment for deficiency against Plaintiff for any indebtedness with respect to the subject mortgage debt.

76.     Nevertheless, on or about July 6, 2017, Defendant sent a collection letter addressed to Plaintiff demanding payment for this discharged and waived debt, which was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

77.     In relevant part, Defendant's July 6, 2017 collection letter listed a Regular

-15-

Payment of $1,755.68, a Past Due amount of $140,146.68, and an Amount Due of $155,500.76, and it included a self-addressed payment coupon that further demanded payment from Plaintiff in the amount of $155,500.76 by August 1, 2017.

78.   Defendant's July 6, 2017 collection letter also provided, in pertinent part, the following "Delinquency Notice":

> The servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process on the loan.
>
> You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure – the loss of your home. As of 07/06/2017, you are 2347 days delinquent on your mortgage.
>
> Total Payment Due: $155,500.76
>
> . . .
>
> This is the amount necessary to cure the default. The total amount due and owing is $320.427.00.

79.   Notably, Defendant's July 6, 2017 collection letter attempts to collect this discharged and waived debt, and asserts both directly and indirectly that Plaintiff still owed this debt.

80.   15 U.S.C. § 1692c(a)(1) prohibits communications with a consumer at any time or place "which should be known to be inconvenient to the consumer."

81.   After Plaintiff filed bankruptcy, which included this debt, Defendant should

have known that Plaintiff did not want any further contact about this debt.

82.     Defendant violated 15 U.S.C. § 1692c(a)(1) by contacting Plaintiff by letter
        to demand payment from Plaintiff for this discharged debt.

83.     15 U.S.C. § 1692d prohibits a debt collector from engaging "in any conduct
        the natural consequence of which is to harass, oppress, or abuse any person
        in connection with the collection of a debt."

84.     Defendant violated 15 U.S.C. § 1692d by harassing and abusing Plaintiff in
        its attempt to collect this discharged debt by letter on July 6, 2017.

85.     15 U.S.C. § 1692e(2) prohibits a debt collector from making false
        representations about a debt, including the false representation about the
        character and legal status of a debt.

86.     Defendant violated 15 U.S.C. § 1692e(2) by stating and implying to Plaintiff
        that this debt was not discharged and was still active and needed to be paid,
        and that there was still property available to be foreclosed on, thereby falsely
        representing the character and legal status of this legally discharged and
        waived debt.

87.     Defendant's July 6, 2017 collection letter also violated 15 U.S.C. §§
        1692e(4) and 1692e(5) by representing that nonpayment of this debt would
        result in the seizure of Plaintiff's home and by threatening to foreclose on
        Plaintiff's home when such actions were not lawful and could not legally be

taken, primarily because the U.S. Bank LSF9 Trust had already foreclosed on Plaintiff's property.

88. 15 U.S.C. § 1692e(9) prohibits written communications that create the false impression that the document was authorized or approved by any court or the government.

89. Defendant violated 15 U.S.C. § 1692e(9) by creating the false impression that the federal bankruptcy court did not discharge Plaintiff's debt, and by representing that Plaintiff still owed money on this debt when in fact it was discharged by the federal bankruptcy court; Defendant's collection letter was designed as though it were authorized by the federal government to collect this debt.

90. 15 U.S.C. § 1692e(10) prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

91. Defendant violated 15 U.S.C. § 1692e(10) by falsely and deceptively misleading Plaintiff, through its July 6, 2017 collection letter, to believe that Plaintiff still owed money on this discharged and waived debt, and that she needed to pay Defendant in order to make it go away.

92. 15 U.S.C. §§ 1692f and 1692f(1) prohibit unfair and unconscionable practices by a debt collector to collect a debt, including "the collection of any amount . . . unless such amount is expressly authorized by the agreement

creating the debt or permitted by law."

93.   It is unfair and unconscionable for Defendant to attempt to collect this discharged and waived debt from Plaintiff when federal law, the permanent injunction issued by the federal bankruptcy court, and its agreement to waive the debt do not permit the collection of such a debt.

94.   Defendant's July 6, 2017 collection letter violated 15 U.S.C. §§ 1692f and 1692f(1) by attempting to collect this debt from Plaintiff, which was waived by Defendant and discharged in bankruptcy, and which may not be collected under federal law.

95.   Additionally, Defendant's July 6, 2017 collection letter violated 15 U.S.C. § 1692f(6) by threatening Plaintiff with nonjudicial foreclosure when it no longer had any right or intention to do so.

96.   Defendant's above-described July 6, 2017 collection letter to Plaintiff was made in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692c(a)(1), 1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(9), 1692e(10), 1692f, 1692f(1) and 1692f(6), amongst others.

97.   If Defendant's July 6, 2017 collection letter was not enough, Defendant continued by sending Plaintiff a letter on July 10, 2017 and another letter on August 2, 2017, twenty-one days after this lawsuit was served on Defendant,

demanding that Plaintiff provide hazard insurance on the subject property and stating that if she did not do so, Defendant would purchase forced placed insurance for the subject property at her expense.

98.  These additional letters were harassing, abusive, and unfair efforts by Defendant to collect this waived and discharged debt, which further violated multiple provisions of the FDCPA as cited above.

### *Summary of FDCPA Claims*

99.  These written collection communications made to Plaintiff by Defendant, and the collection employees employed by Defendant, were made in violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the provisions of the FDCPA cited herein.

100.  These violations by Defendant were knowing, willful, negligent and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

101.  When Plaintiff filed her Chapter 13 bankruptcy petition in 2011, and surrendered her property, Plaintiff believed she would be enjoying the fresh start guaranteed by the U.S. Bankruptcy Code. However, as a result of Defendant's continued collection letters, Plaintiff has been denied her fresh start.

102.  Defendant's false representation to Plaintiff in its July 6, 2017 collection

letter that this debt was not discharged in bankruptcy and still needed to be paid by Plaintiff, was a deceptive attempt to collect this debt, which materially misled Plaintiff as to the legal status and character of this debt and which affected and frustrated Plaintiff's ability to intelligently respond to Defendant's collection efforts.

103.   Plaintiff suffered concrete and particularized harm because her legally-protected consumer rights to be treated fairly and respectfully under the FDCPA were violated by Defendant when it misled her about her rights to discharge this debt in bankruptcy, continued to collect this discharged and waived debt from her, and threatened her with additional judicial and nonjudicial collection efforts.

104.   Plaintiff has suffered actual damages as a result of Defendant's illegal collection communications in the form of mental anguish, crying, stress, loss of sleep, worry, fear, confusion and frustration.

### *Respondeat Superior Liability*

105.   The acts and omissions herein of the individuals employed to collect debts by Defendant, and the other debt collectors employed as agents of Defendant who communicated with Plaintiff as more further described herein, including Fairfax, Inc., were committed within the time and space limits of their agency relationship with their principal, Defendant.

106.  The acts and omissions by these individuals and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant in collecting debts.

107.  By committing these acts and omissions against Plaintiff, these individuals and these other debt collectors were motivated to benefit their principal, Defendant.

108.  Defendant is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its collection employees, and Fairfax, Inc., including but not limited to violations of the TCPA and FDCPA in its attempts to collect a debt from Plaintiff.

## TRIAL BY JURY

109.  Plaintiff is entitled to and hereby respectfully demands a trial by jury on all issues so triable.  US Const. amend. 7.  Fed. R. Civ. P. 38.

## CAUSES OF ACTION

## COUNT I.

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

## 47 U.S.C. § 227 *et seq.*

110.  Plaintiff incorporates by reference all of the above paragraphs of this First Amended Complaint as though fully stated herein.

111. Within the four-year period immediately preceding this action, Defendant made numerous calls to Plaintiff's cell phone using an automatic telephone dialing system in violation of the TCPA, 47 U.S.C.  § 227(b)(1)(A)(iii) and 47 C.F.R. 64.1200 (a)(1)(iii).

112. The acts and/or omissions of Defendant at all times material and relevant hereto, as described in this First Amended Complaint, were done unfairly, unlawfully, intentionally, deceptively and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

113. As a causally direct and legally proximate result of the above violations of the TCPA, Defendant, at all times material and relevant hereto and as described in this First Amended Complaint, caused Plaintiff to sustain damages.

114. Defendant did not have the prior express consent of Plaintiff to use an automatic telephone dialing system to call Plaintiff's cell phone.

115. Defendant made these calls to Plaintiff's cell phone willfully and after Plaintiff explicitly asked Defendant to stop.

116. Under 47 U.S.C. § 227(b)(3)(B), Plaintiff is entitled to statutory damages under the TCPA of $500.00 per automated phone call and per prerecorded message made to Plaintiff by Defendant and its agents.

117. Defendant willfully and knowingly violated the TCPA and, as such, Plaintiff

is entitled to $1,500.00 per automated phone call and per prerecorded message made to Plaintiff pursuant to 47 U.S.C. § 227(b)(3).

118.  Plaintiff is also entitled to injunctive relief prohibiting Defendant from contacting Plaintiff's cell phone using an automatic telephone dialing system pursuant to 47 U.S.C. § 227(b)(3)(a).

## COUNT II.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 *et seq.*

119.  Plaintiff incorporates by reference all of the above paragraphs of this First Amended Complaint as though fully stated herein.

120.  As a result of Defendant's violations of the FDCPA within the one-year period immediately preceding this action, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from Defendant herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant as follows:

## COUNT I.

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

### 47 U.S.C.  § 227 *et seq.*

- for an award of statutory damages of $500.00 per call pursuant to 47 U.S.C. § 227(b)(3)(B) against Defendant and for Plaintiff;

- for an award of treble damages of $1,500.00 per call pursuant to 47 U.S.C. § 227(b)(3) against Defendant and for Plaintiff;

- for an injunction prohibiting Defendant from contacting the Plaintiff's cell phone using an automatic telephone dialing system pursuant to 47 U.S.C. § 227(b)(3)(A);

## COUNT II.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. § 1692 *et seq.*

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against Defendant and for Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against Defendant and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Defendant and for Plaintiff; and

- for such other and further relief as may be just and proper.

Respectfully submitted,

**Barry & Helwig, LLC**

Dated: September 6, 2017

By:  /s/ Patrick J. Helwig
Patrick J. Helwig, Esq.
Attorney I.D. # 0391787MN
2701 University Ave SE, Suite 209
Minneapolis, Minnesota 55414-3236
Telephone:  (612) 379-8800
Facsimile: (612) 379-8810
phelwig@lawpoint.com

**Law Offices Of William A. Mueller, LLC**
Kimberly Wirth, Esq.
Attorney I.D. # 6299352IL
Ron Buch, Esq.
Attorney I.D. # 6209955IL
5312 West Main Street
Belleville, IL 62226
Telephone:  (618) 236-7000
Facsimile: (618) 236-7002
kwirth@tbcwam.com
rbuch@tbcwam.com

***Attorneys for Plaintiff***